Good morning, Your Honors. I'm Alison Minow for Clinton-Hiler. And if you could keep your voice up, please. I will certainly try to do that. Thank you. This is a Social Security disability case, and our position is that the claimant is entitled to a remand for payment of benefits, not a remand to rehear the case. And I think that overall it would be fair to say that we do not have a dispute with the government on any legal question, that it's all really a question of the facts in the record and what the ALJ did and did not consider. The two significant items of fact in the record that we believe entitled Mr. Hiler to a remand are, first, the VA ruling about his disability. And this turns on a VA proposed decision in 2001 and the final decision that it made in 2002 on the same proceeding. And the ALJ refers briefly to the 2001 proposed decision, but doesn't refer at all to the 2002 decision. And I have looked without success in the ALJ's decision for any reference that the ALJ was aware of the 2002 decision, even though it was part of the government record. It was one of the exhibits at the time. And I would also note that probably the most significant page of that decision is missing from the record, both in our version and the government's version, and there just doesn't seem to be the third page of it. Let's assume for a minute that we agree with you about the inadequacy of the proposed rule, because the ALJ repeatedly referred to that as if it were a final decision. I agree with that, yes. But I'm a little puzzled when you say that you want to suggest affirmed benefits based upon the 2002 decision. Explain to me, assuming for a moment, that the 2001 is not adequate. You're saying instead of our remanding it back to the ALJ to get that right and make a decision with the correct facts for, I guess, as a woman, ALJ in this case. Correct. That she could get that correct. But on what basis? We put that one to the side. Why does the 2002 finding give your client benefits without further fact-finding by the ALJ? Well, there's two facts. There's the 2002 decision, and there's also the treating physician's residual functional capacity report that the ALJ admitted into the record but then doesn't refer to in her decision. The standard for remand for benefits is whether there are facts in the record that could support a contrary decision, and we simply submit that there aren't. The basis, the narrow factual issue that the ALJ was deciding here was whether there was medical improvement sufficient to negate disability at this point. And the medical improvement cited by the ALJ, which frankly I find inexplicable, is December 4th. And based on having seen the doctor on December 3rd, and the doctor says he might be able to do light work in a while, I see nothing in the record that supports medical improvement. The ALJ opines that there might have been medical improvement because of the lack of evidence that there wasn't medical improvement. But I don't think that that rises to the level of actually being evidence of medical improvement. I don't see evidence of medical improvement in the file. Even assuming that the VA has it right, so we're not challenging the correctness of the VA's determination of disability, how can we be sure that the VA's definition of partial disability satisfies the Social Security definition of disability that your client has to satisfy? Well, first of all, it's partial disability only in the sense that he's not considered fully disabled, but he is considered unemployable. Which partial disability plus unemployable equals the Social Security standard of unable to do substantial work. Right, but what I'm after is the VA has its definition that substantially overlaps, but is not identical to the Social Security definition. So how can we know on this record, without having the ALJ looking at it, now understanding perfectly what happened as the ALJ previously did not, how can we know what the ALJ is going to decide, or maybe say it differently, how can we be sure that the ALJ is compelled to decide for your client? I'm quite on board for a remand. The only question is whether it's a remand for the ALJ to get her act together, or a remand for benefits. Well, I think that that's a tricky question, Your Honor, except that the VA decision does come to the clear conclusion that his disability makes him unemployable, for the exact same reasons that he would be unemployable in the Social Security sense, in that he can't sustain a full-time job of any kind. And that is exactly the Social Security standard. So if that's a standard the VA is deciding, which I think it's clear from their decision, then I think as a legal matter, it's the same question. I have a question going back to the treating physician issue. You're talking about Dr. Regan, I don't know which it is. Yes. As you know, the ALJ is not required to discuss evidence that is neither significant nor probative. Correct. As I understand it, what we're talking about is a questionnaire dated November 14, 2006. Correct. The document indicates that he started treating Hyler on April 2003, most recent exam 2006. But the questionnaire concluded, Hyler was, in quotes, not likely to be employable in the foreseeable future. However, question 23 was, in your best medical opinion, what is the earliest date that the description of symptoms and limitations in this questionnaire applies? And there was no answer. That's correct. So doesn't that kind of undercut the primary value of the treating physician's opinion? I don't think so, Your Honor. First, because the legal standard is that the ALJ has to explain it. This court is not allowed to substitute a plausible explanation for the ALJ's failure to explain. And the ALJ, other than admitting it into evidence, makes no further reference to this opinion. And, you know, this court has really applied a common-sense standard about what subsequent medical opinions are relevant to the prior disability. And if you look at all of the evidence in this case, from 1997 to the 2006 RFC questionnaire, it's the same complaints. It's the same disability. It's the same medical issue. It's the same terms used for his disability. But if I understand correctly, counsel, you're objecting to the fact that the ALJ did not discuss this evidence. Correct. And yet I started my questioning by referring you to the Howard case, which found that the ALJ is not required to discuss evidence that's neither significant nor probative. Now, if the ALJ treated this letter that way because question 23 was not answered, why would the ALJ be required as a matter of law to discuss it further? Well, I think it's a significant nor probative standard that's the problem. And the treating physician's assessment of his residual functional capacity, it's very hard to dismiss that as non-probative without going into the question of whether it's too late in time. If we follow what my colleague mentioned a moment ago, if we say, you know, this initial problem of treating a proposed matter as if it were final is enough to reverse this and send it back, why wouldn't we do that at the same time? Then this other issue back there, why be guessing about it? And let the ALJ take a fresh look. You'll, I'm sure, impressively point this out, why it's important, bring other evidence to bear perhaps, and go from there. Why isn't that the correct solution in this case? Well, first of all, I mean, the ALJ clearly had the duty in the first place to explain it. Well, unless it falls into the category that I mentioned from the Howard case. Well, the Howard case doesn't refer, in my recollection, to the opinion of a treating physician on the exact same disability. And I have yet to see a case cited by the government or anywhere else that treats the opinion of a treating physician on the disability itself as being so irrelevant as not to merit discussion. I know of no such case. Well, I think we could take care of that problem if we're remanding by just a gentle recitation of the standard. I'm sure that's true, Your Honor. And you would then have that available to you. What was Dr. Reagan's specialty? Was he a psychiatrist? No, no, no, no. I believe he was the primary physician at the VA. He signs it as his, I can't remember what the word is, whether it's primary or home or whatever. I don't know what his specialty was, but he was his primary doctor. He was treating the patient. He was the primary doctor treating the patient. At the VA. Yes, correct, Your Honor. Okay. You've used up all your time. Let's hear from the government, and we'll give you a moment to respond. Thank you very much, Your Honor. Good morning. Kathy Reagan for the Commissioner. September 30, 2000 is the most important date in this case. This is a Title II only case with a date last insured of September 30, 2000. This means in 2007, the ALJ decided whether Mr. Heiler showed that his impairments precluded him from performing substantial gainful activity before September 30, 2000. Both SSA and the VA agree that Mr. Heiler was disabled prior to December 3, 1998. The agencies disagree about the impact of Mr. Heiler's impairments of the recovery from his back surgery in July 1998. The SSA ALJ relied on treating surgeon Dr. Peterson's opinion, releasing him for vocational rehab at any time with a goal of sedentary to light work activity in December 1998. He relied on physical therapist Jill Skidmore Erickson's notation that mobility and flexibility were within normal limits by December 1998. Despite his exhibiting overt pain behaviors and symptom magnification, the ALJ relied on Mr. Heiler's attendance in a college program through vocational rehab from August 2000 to fall of 2001. The ALJ relied on Mr. Heiler's role as a solo caretaker for three small children. The ALJ relied on the lack of treatment required for his impairments between 1999 and 2002. Let's assume all that's true. I know of nothing to dispute it. Nevertheless, the ALJ clearly referred to and relied upon what turned out to be a proposed reduction in the level of disability in the 2001 determination. If that's correct, and I think that is, how can we fail to send this back, to have the ALJ re-examine it based upon the fact that this was merely proposed? It never happened. It still stayed up at the, I think, 40% level. So all these other factors that you bring in, of course, are very important under the five-step analysis, but you can't have, it would be like our writing an opinion and relying upon a Supreme Court opinion had been overruled by the Supreme Court, which frequently happens. Well, Your Honor, Casel provides that an ALJ may deviate from a VA's decision if they give persuasive, valid, and specific reasons for doing so. One of the reasons, or one of the specified reasons that this court has noted in the past is a proper, justified re-evaluation of past evidence, which the ALJ did here. The ALJ relied on, the VA was not looking at specifically this period of time. They were looking at an evaluation from October 2001 and assessing his functioning at that point and making assumptions on that. The distinction in the evidence relied on by the VA in the 2001 rating decision proposing to reduce his ratings and the 2002 were Mr. Heiler's subjective statements. The ALJ here made a proper and unchallenged negative credibility finding. In addition, the ALJ was relying on, as instructed by the SSA regulations, on his contemporaneous treating physician's opinions on his functioning during that time period. Therefore, the ALJ properly and had a justified reason for re-evaluating the evidence and reaching a different conclusion from the VA. I understand all that, but it still makes me uncomfortable to affirm a decision by an ALJ that has, at least as one of its ingredients, a flat-out mistake. I can't be confident that the ALJ would arrive at the same conclusion without the mistake. Well, Your Honor, I believe the standard for VA decisions is that they are due great weight. However, a treating physician contemporaneously can dictate the result, as opposed to a lesser standard with the VA here. The ALJ went through all of the contemporaneous material. She noted twice that she was giving particular attention to the opinions in the evidence between 1998 and 2000. She noted twice that the opinions were minimal due to his lack of treatment during that time period. But you just said that the ALJ is required to give the decision of the VA great weight. I'm assuming that the ALJ did give the decision of the VA great weight. And now we're told, we realize what the ALJ didn't realize, was that she misunderstood the VA's decision. So something that she gave great weight and she was wrong about, you're nonetheless saying, but that doesn't matter. Well, if she was wrong about it, then any error was harmless. In light of her evaluation of the record in front of her, in light of the distinct difference between the periods of evaluation between the SSA and the VA. Do you have any case law, counsel, that would give bona fides to that position? The idea that one of the material points that the ALJ considered turned out to be incorrect. You're saying that there are other bases, and you recited many of them, that were sufficient under the five-step analysis to get the ALJ to the same place she started out with, or finished with. Is there any case law that says that harmless error applies in this exact situation? I believe the recent Ninth Circuit decision of Molina indicates that harmless error is a totality evaluation. And you have to look at that error in light of the rest of the ALJ's decision. And although Molina did not deal with VA in particular, it does stand for those propositions. It has an extensive discussion of harmless error. And I would argue that in light of the ALJ's reliance on the contemporaneous treating physician opinion here, the contemporaneous physical therapist findings and opinions, and in light of her evaluation of his credibility, that any error the ALJ made was harmless, because the earlier part of her decision makes clear that she would have deviated from that VA, and she would have had persuasive, specific, and valid reasons. At most, it's an articulation problem. Does the fact that she did not discuss Dr. Reagan's admittedly incomplete questionnaire, coupled with the proposed regulation, add any more weight to the concept of sending this back to the ALJ to look at it again? Dr. Reagan's opinion gives no basis for remand in this case. The ALJ indicated her interpretation of this opinion when she was handed the opinion at the hearing. She noted specifically that the treating relationship started several years after the date last insured, that the opinion was written several years after that. And if you look at the specifics of Dr. Reagan's opinion, he relies on testing from 2004-2005. He relies on signs that are inconsistent with the signs noted in his contemporaneous treating notes. In particular, I'm thinking of the notation of a halting gait that Mr. Reagan relied on. Dr. Peterson, in December of 1998, specifically noted that his stance in gait was smooth. Dr. Reagan, another basis was a limited range of motion. Mr. Heiler's physical therapy notes from 1998, I believe November and December, indicate that he had full mobility and full flexibility. Skidmore Erickson noted those in her physical therapy notes shortly before she released him from his physical therapy. So I do not believe that Dr. Reagan's opinion provides a basis for remand at all. If your honors have no more questions, I feel I've hit my major points. Okay. Thank you very much. Thank you. Let's put a minute on the clock. Thank you. I appreciate the extra time and I'll be very brief. The government notes in its brief that the VA decision of 2002 notes medical improvement. Actually, that decision says slight, if any, medical improvement. So I don't think that that supports the government case. My main comment and response is that this court has limited jurisdiction and limited review in what it can say about an ALJ decision and how it can reverse. And the main thing is that the ALJ is entitled to great deference, but in return for that great deference is required to explain what he or she is doing. And in this case, the two important pieces of fact that weren't explained, they're not explained. This court cannot supply adequate explanations from the ALJ and affirm on that basis. There simply is no adequate explanation. And on that basis alone, Mr. Heiler is entitled to a remand. Okay. Thank you very much. Thank both sides for your helpful arguments. Heiler v. Astro, submitted for decision.
judges: Goodwin, Fletcher, Smith